GREENBERG TRAURIG, LLP
J. Rick Taché (SBN 195100)
E-mail: tacher@gtlaw.com
3161 Michelson Drive, Suite 1000
Irvine, California 92612
Telephone: 949-732-6500
Facsimile: 949-732-6501

GREENBERG TRAURIG, LLP
Ross Spencer Garsson (*Pro Hac Vice*)
E-mail: garssonr@gtlaw.com
300 W. 6th Street, Suite 2050
Austin, Texas 78701
Telephone: 512-320-7200
Facsimile: 512-320-7210

Attorneys for Defendant
ATX INNOVATION, INC.,
d/b/a Tabbedout

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMERANTH, INC., | CASE NO. 3:12-cv-01656 JLS (NLS) |
| Plaintiff/Counter-Defendant, | |
| v. | **DEFENDANT ATX INNOVATION, INC.'S ANSWER TO PLAINTIFF'S COMPLAINT FOR PATENT INFRINGEMENT AND COUNTERCLAIM** |
| ATX INNOVATION, INC., d/b/a Tabbedout, | |
| Defendant/Counter-Plaintiff. | DEMAND FOR JURY TRIAL |
| | Assigned to: Judge Janis L. Sammartino |

TO THE HONORABLE JUDGE OF THE COURT:

ATX Innovation, Inc., d/b/a/ Tabbedout ("Tabbedout"), files this Answer to Plaintiff Ameranth, Inc.'s ("Ameranth") Complaint For Patent Infringement and its Counterclaims, and alleges the following:

### ANSWER TO PLAINTIFF'S COMPLAINT FOR PATENT INFRINGEMENT

### PARTIES

1.     Tabbedout is without sufficient knowledge or information to admit or deny the allegations set forth in Paragraph 1 of Plaintiff's Complaint For Patent Infringement ("Plaintiff's Complaint") and therefore denies them.

2.     Tabbedout admits that it is a Delaware corporation having a principal place of business and headquarters in Austin, Texas.  Tabbedout further admits it is incorporated in Delaware under the corporate name ATX Innovation, Inc. and does business under the name Tabbedout.  Tabbedout further admits that Tabbedout provides a system that allows patrons of participating restaurants/bars (merchants) to open, view, and pay their tab with their mobile device ("Tabbedout's System").  Tabbedout denies that Tabbedout's System allows the patron's mobile device to interface with the merchant's point-of-sale system. Tabbedout admits that Tabbedout's System interfaces Tabbedout's central server with the patron's mobile device and also interfaces Tabbedout's central server with the point-of-sale system of a participating merchant. Tabbedout further admits that Tabbedout's System has three fundamental components: (i) a client component (the patron's mobile device having Tabbedout's mobile device application (the "Tabbedout app")), (ii) a merchant point-of-sale component (the merchant's point-of-sale equipment that has incorporated Tabbedout's merchant software); and (iii) Tabbedout's component (Tabbedout's central server).  Otherwise, Tabbedout denies the remaining allegations set forth in Paragraph 2 of Plaintiff's Complaint.

DEFENDANT'S ANSWER TO PLAINTIFF'S COMPLAINT FOR PATENT INFRINGEMENT AND COUNTERCLAIM

*12cv01656 JLS (NLS)*

*AUS 536216323v6*

## JURISDICTION AND VENUE

3.      Tabbedout admits that this action brought by Ameranth regards allegations of patent infringement arising under 35 U.S.C. §§ 271 and 281-285.  Tabbedout denies that Ameranth is entitled to relief, and denies all remaining allegations set forth Paragraph 3 of Plaintiff's Complaint, if any.

4.      Tabbedout admits that Ameranth purports to base subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).  At this time, Tabbedout does not contest this Court's subject matter jurisdiction over Ameranth's patent infringement claims.  Tabbedout expressly denies that it is committing, or has ever committed, any act of infringement in this Judicial District or any other District. Furthermore, Tabbedout also denies the remaining allegations set forth in Paragraph 4 of Plaintiff's Complaint.

5.      Tabbedout denies that Tabbedout's System allows the patron's mobile device to interface with the merchant's point-of-sale system.  Tabbedout admits that Tabbedout's System interfaces Tabbedout's central server with the patron's mobile device and also interfaces Tabbedout's central server with the point-of-sale system of a participating merchant.  Tabbedout further admits that Tabbedout's System has three fundamental components: (i) a client component (the patron's mobile device having the Tabbedout app), (ii) a merchant point-of-sale component (the merchant's point-of-sale equipment that has incorporated Tabbedout's merchant software); and (iii) Tabbedout's component (Tabbedout's central server).  Tabbedout admits Tabbedout's System is provided in the United States. Otherwise, Tabbedout denies the remaining allegations set forth in Paragraph 5 of Plaintiff's Complaint.

6.      Tabbedout admits, solely for the purposes of this litigation, that this Court has personal jurisdiction over Tabbedout in this case.  Tabbedout expressly denies that it is committing, or has ever committed, any act of infringement in this Judicial District or any other District.   Furthermore, Tabbedout also denies the remaining allegations set forth in Paragraph 6 of Plaintiff's Complaint.

7.      Tabbedout admits that Ameranth purports to base venue on 28 U.S.C. §1391(b) and (c) and 28 U.S.C. §1400(b), but does not admit that this Judicial District is the most appropriate or convenient forum for the adjudication of Ameranth's claims.  Tabbedout expressly denies that it is committing, or has ever committed, any act of infringement in this Judicial District or any other District.

DEFENDANT'S ANSWER TO PLAINTIFF'S COMPLAINT FOR PATENT INFRINGEMENT AND COUNTERCLAIM

AUS 536216323v6

Furthermore, Tabbedout also denies the remaining allegations set forth in Paragraph 7 of Plaintiff's Complaint, if any.

## BACKGROUND

8.     Tabbedout is without sufficient knowledge or information to admit or deny the allegations set forth in Paragraph 8 of Plaintiff's Complaint and therefore denies them.

9.     Tabbedout is without sufficient knowledge or information to admit or deny the allegations set forth in Paragraph 9 of Plaintiff's Complaint and therefore denies them.

10.     Tabbedout is without sufficient knowledge or information to admit or deny the allegations set forth in Paragraph 10 of Plaintiff's Complaint and therefore denies them.

11.     Tabbedout is without sufficient knowledge or information to admit or deny the allegations set forth in Paragraph 11 of Plaintiff's Complaint and therefore denies them.

## RELATED CASES PREVIOUSLY FILED

12.     Tabbedout admits that the patents asserted herein are U.S. Patent No. 6,384,850 ("the '850 Patent"), U.S. Patent No. 6,871,325 ("the '325 Patent") and U.S. Patent No. 8,146,077 ("the '077 Patent") (collectively, the "Patents-in-Suit").  Otherwise, Tabbedout is without sufficient knowledge or information to admit or deny the remaining allegations set forth in Paragraph 12 of Plaintiff's Complaint and therefore denies them.

13.     Tabbedout admits that Ameranth purports that Ameranth is also asserting claims of the Patents-In-Suit in separate lawsuits, against other defendants, that are already pending before this Court, including Case Nos. 3:11-cv-01810-JLS-NLS, 3:12-cv-00729-JLS-NLS, 3:12-cv-00731-JLS-NLS, 3:12-cv-00732-JLS-NLS,   3:12-cv-00733-JLS-NLS,   3:12-cv-00737-JLS-NLS,   3:12-cv-00738-JLS-NLS, 3:12-cv-00739-JLS-NLS,   3:12-cv-00742-JLS-NLS   and   3:12-cv-00858-JLS-NLS.   Otherwise, Tabbedout is without sufficient knowledge or information to admit or deny the remaining allegations set forth in Paragraph 13 of Plaintiff's Complaint and therefore denies them.

## COUNT I

## PATENT INFRINGEMENT (U.S. PATENT NO. 6,384,850)

## (35 U.S.C. § 271)

DEFENDANT'S ANSWER TO PLAINTIFF'S COMPLAINT FOR PATENT INFRINGEMENT AND COUNTERCLAIM

*12cv01656 JLS (NLS)*

AUS 536216323v6

14.     Tabbedout realleges and incorporates herein by reference its responses to the allegations contained in Paragraphs 1 though 13 of Plaintiff's Complaint.

15.     Tabbedout admits that Exhibit A to Plaintiff's Complaint is purported to be a true and copy of the '850 Patent and that Ameranth has identified this Exhibit A as a true and copy of the '850 Patent.  Tabbedout further admits that Exhibit A states that (a) the '850 Patent was entitled "Information Management and Synchronous Communications System with Menu Generation," and (b) the '850 Patent was issued by the United States Patent & Trademark Office ("USPTO") on May 7, 2002. Otherwise, Tabbedout is without sufficient knowledge or information to admit or deny the remaining allegations set forth in Paragraph 15 of Plaintiff's Complaint and therefore denies them.

16.     Tabbedout is without sufficient knowledge or information to admit or deny the allegations set forth in Paragraph 16 of Plaintiff's Complaint and therefore denies them.

17.     Tabbedout denies the allegations of Paragraph 17 of Plaintiff's Complaint.

18.     Tabbedout denies the allegations of Paragraph 18 of Plaintiff's Complaint.  Furthermore, Ameranth affirmatively asserts that the scope and breadth of the claims of the '850 Patent is a legal issue, not a factual allegation. Accordingly, with respect to the statements in Paragraph 18 of the Plaintiff's Complaint concerning the legal scope and breadth of the claims of the '850 Patent, no response is required.

19.     Tabbedout denies that Tabbedout's System allows the patron's mobile device to interface with the merchant's point-of-sale system. Tabbedout admits that, in Tabbedout's System, Tabbedout's central server interfaces with the patron's mobile device (the client component) and further admits that, in Tabbedout's System, Tabbedout's central server interfaces with the point-of-sale system of the participating merchant (the merchant point-of-sale component).   Tabbedout further admits that it provides instructions and directions to patrons as to how to use their mobile devices as the client component of Tabbedout's System.  Tabbedout further admits that Tabbedout advertises, promotes, and encourages patrons and merchants to use the client component and the merchant point-of-sale component, respectively.  Otherwise, Tabbedout denies the remaining allegations set forth in Paragraph 19 of Plaintiff's Complaint.

4

20.     Tabbedout denies the allegations of Paragraph 20 of Plaintiff's Complaint.  Tabbedout expressly denies that it had knowledge of the '850 Patent before Ameranth served Plaintiff's Complaint upon Tabbedout.   Tabbedout further expressly denies that it should have known of the '850 Patent before Ameranth served Plaintiff's Complaint upon Tabbedout.

21.     Tabbedout denies the allegations of Paragraph 21 of Plaintiff's Complaint.

22.     Tabbedout admits that it provides instructions and directions to patrons as to how to use their mobile devices as the client component of Tabbedout's System.   Tabbedout further admits that Tabbedout advertises, promotes, and encourages patrons and merchants to use the client component and the merchant point-of-sale component, respectively.   Otherwise, Tabbedout denies the remaining allegations set forth in Paragraph 22 of Plaintiff's Complaint.

23.     Tabbedout denies the allegations of Paragraph 23 of Plaintiff's Complaint.

24.     Tabbedout denies the allegations of Paragraph 24 of Plaintiff's Complaint.

25.     Tabbedout denies the allegations of Paragraph 25 of Plaintiff's Complaint.

## COUNT II

### PATENT INFRINGEMENT (U.S. PATENT NO. 6,871,325)

### (35 U.S.C. § 271)

26.     Tabbedout realleges and incorporates herein by reference its responses to the allegations contained in Paragraphs 1 though 25 of Plaintiff's Complaint.

27.     Tabbedout admits that Exhibit B to Plaintiff's Complaint is purported to be a true and copy of the '325 Patent and that Ameranth has identified this Exhibit B as a true and copy of the '325 Patent.  Tabbedout further admits that Exhibit B states that (a) the '325 Patent was entitled "Information Management and Synchronous Communications System with Menu Generation," and (b) the '325 Patent was issued by the USPTO on March 22, 2005.   Otherwise, Tabbedout is without sufficient knowledge or information to admit or deny the remaining allegations set forth in Paragraph 27 of Plaintiff's Complaint and therefore denies them.

28.     Tabbedout is without sufficient knowledge or information to admit or deny the allegations set forth in Paragraph 28 of Plaintiff's Complaint and therefore denies them.

29.     Tabbedout denies the allegations of Paragraph 29 of Plaintiff's Complaint.

DEFENDANT'S ANSWER TO PLAINTIFF'S COMPLAINT FOR PATENT INFRINGEMENT AND COUNTERCLAIM
*12cv01656 JLS (NLS)*
AUS 536216323v6

30.     Tabbedout denies the allegations of Paragraph 30 of Plaintiff's Complaint.  Furthermore, Ameranth affirmatively asserts that the scope and breadth of the claims of the '325 Patent is a legal issue, not a factual allegation.  Accordingly, with respect to the statements in Paragraph 30 of the Plaintiff's Complaint concerning the legal scope and breadth of the claims of the '325 Patent, no response is required.

31.     Tabbedout denies that Tabbedout's System allows the patron's mobile device to interface with the merchant's point-of-sale system.  Tabbedout admits that, in Tabbedout's System, Tabbedout's central server interfaces with the patron's mobile device (the client component) and further admits that, in Tabbedout's System, Tabbedout's central server interfaces with the point-of-sale system of the participating merchant (the merchant point-of-sale component).   Tabbedout further admits that it provides instructions and directions to patrons as to how to use their mobile devices as the client component of Tabbedout's System.  Tabbedout further admits that Tabbedout advertises, promotes, and encourages patrons and merchants to use the client component and the merchant point-of-sale component, respectively.  Otherwise, Tabbedout denies the remaining allegations set forth in Paragraph 31 of Plaintiff's Complaint.

32.     Tabbedout denies the allegations of Paragraph 32 of Plaintiff's Complaint.

33.     Tabbedout denies the allegations of Paragraph 33 of Plaintiff's Complaint.

34.     Tabbedout admits that it provides instructions and directions to patrons as to how to use their mobile devices as the client component of Tabbedout's System.   Tabbedout further admits that Tabbedout advertises, promotes, and encourages patrons and merchants to use the client component and the merchant point-of-sale component, respectively.   Otherwise, Tabbedout denies the remaining allegations set forth in Paragraph 34 of Plaintiff's Complaint.

35.     Tabbedout denies the allegations of Paragraph 35 of Plaintiff's Complaint.  Tabbedout expressly denies that it had knowledge of the '325 Patent before Ameranth served Plaintiff's Complaint upon Tabbedout.

36.     Tabbedout denies the allegations of Paragraph 36 of Plaintiff's Complaint.

37.     Tabbedout denies the allegations of Paragraph 37 of Plaintiff's Complaint.

## COUNT III

6

## PATENT INFRINGEMENT (U.S. PATENT NO. 8,146,077)

### (35 U.S.C. § 271)

38.     Tabbedout realleges and incorporates herein by reference its responses to the allegations contained in Paragraphs 1 though 37 of Plaintiff's Complaint.

39.     Tabbedout admits that Exhibit C to Plaintiff's Complaint is purported to be a true and copy of the '077 Patent and that Ameranth has identified this Exhibit C as a true and copy of the '077 Patent.  Tabbedout further admits that Exhibit C states that (a) the '077 Patent was entitled "Information Management and Synchronous Communications System with Menu Generation," and (b) the '077 Patent was issued by the USPTO on March 27, 2012.   Otherwise, Tabbedout is without sufficient knowledge or information to admit or deny the remaining allegations set forth in Paragraph 39 of Plaintiff's Complaint and therefore denies them.

40.     Tabbedout is without sufficient knowledge or information to admit or deny the allegations set forth in Paragraph 40 of Plaintiff's Complaint and therefore denies them.

41.     Tabbedout denies the allegations of Paragraph 41 of Plaintiff's Complaint.

42.     Tabbedout denies the allegations of Paragraph 42 of Plaintiff's Complaint.  Furthermore, Ameranth affirmatively asserts that the scope and breadth of the claims of the '077 Patent is a legal issue, not a factual allegation. Accordingly, with respect to the statements in Paragraph 42 of the Plaintiff's Complaint concerning the legal scope and breadth of the claims of the '077 Patent, no response is required.

43.     Tabbedout denies that Tabbedout's System allows the patron's mobile device to interface with the merchant's point-of-sale system. Tabbedout admits that, in Tabbedout's System, Tabbedout's central server interfaces with the patron's mobile device (the client component) and further admits that, in Tabbedout's System, Tabbedout's central server interfaces with the point-of-sale system of the participating merchant (the merchant point-of-sale component).   Tabbedout further admits that it provides instructions and directions to patrons as to how to use their mobile devices as the client component of Tabbedout's System.  Tabbedout further admits that Tabbedout advertises, promotes, and encourages patrons and merchants to use the client component and the merchant point-of-sale

7

component, respectively.  Otherwise, Tabbedout denies the remaining allegations set forth in Paragraph 43 of Plaintiff's Complaint.

44.     Tabbedout denies the allegations of Paragraph 44 of Plaintiff's Complaint.

45.     Tabbedout denies the allegations of Paragraph 45 of Plaintiff's Complaint.

46.     Tabbedout admits that it provides instructions and directions to patrons as to how to use their mobile devices as the client component of Tabbedout's System.  Tabbedout further admits that Tabbedout advertises, promotes, and encourages patrons and merchants to use the client component and the merchant point-of-sale component, respectively.  Otherwise, Tabbedout denies the remaining allegations set forth in Paragraph 46 of Plaintiff's Complaint.

47.     Tabbedout denies the allegations of Paragraph 46 of Plaintiff's Complaint.  Tabbedout expressly denies that it had knowledge of the '077 Patent before Ameranth served Plaintiff's Complaint upon Tabbedout.

48.     Tabbedout denies the allegations of Paragraph 48 of Plaintiff's Complaint.

49.     Tabbedout denies the allegations of Paragraph 49 of Plaintiff's Complaint.

## ADDITIONAL/AFFIRMATIVE DEFENSES

Tabbedout asserts the following Additional/Affirmative Defenses in response to Plaintiff's Complaint.  Tabbedout reserves the right to amend its responses to add additional Defenses as they become known throughout the course of this case.  Assertion of a defense is not a concession that Tabbedout has the burden of proving the matter asserted.

## FIRST ADDITIONAL/AFFIRMATIVE DEFENSE

50.     Plaintiff's Complaint fails to state a claim upon which relief can be granted.

## SECOND ADDITIONAL/AFFIRMATIVE DEFENSE

51.     Tabbedout has not infringed, and does not infringe, either literally or under the doctrine of equivalents, any claim of the Patents-In-Suit, whether directly, indirectly, individually, jointly, contributorily, and/or by active inducement.

52.     Without conceding that Tabbedout performs any step of any claim of the Patents-In-Suit, Tabbedout has not infringed and is not infringing the Patents-In-Suit because Tabbedout does not

DEFENDANT'S ANSWER TO PLAINTIFF'S COMPLAINT FOR PATENT INFRINGEMENT AND COUNTERCLAIM

*12cv01656 JLS (NLS)*

AUS 536216323v6

control or direct one or more required steps, elements, and/or limitations of one or more claims of the Patents-In-Suit.

### THIRD ADDITIONAL/AFFIRMATIVE DEFENSE

53.     The claims of the Patents-In-Suit are invalid because they fail to satisfy one or more conditions for patentability specified in Title 35 of the United States Code, including, but not limited to, 35 U.S.C. §§ 101, 102, 103, and/or 112.

### FOURTH ADDITIONAL/AFFIRMATIVE DEFENSE

54.     Ameranth's claims for relief are statutorily limited, in whole or in part, by Title 35 of the United States Code, including, but not limited to, 35 U.S.C. §§ 286-287.  Ameranth's recovery of costs is limited under 35 U.S.C. § 288.

### FIFTH ADDITIONAL/AFFIRMATIVE DEFENSE

55.     Ameranth's claims that Tabbedout indirectly infringes the Patents-In-Suit are barred, in whole or in part, as Tabbedout is not liable to Ameranth for the allegedly infringing acts because (a) Tabbedout did not know (and had no reason it should have known) of the Patents-In-Suit before Ameranth served Plaintiff's Complaint upon Tabbedout; (b) Tabbedout did not have the specific intent to cause infringement of the Patents-In-Suit, and/or (c) Tabbedout otherwise did not know that its actions would constitute indirect infringement of the Patents-In-Suit.

### SIXTH ADDITIONAL/AFFIRMATIVE DEFENSE

56.     Ameranth's claims are barred, in whole or in part, by the doctrines of laches, waiver, acquiescence, license, and/or estoppel.

### SEVENTH ADDITIONAL/AFFIRMATIVE DEFENSE

57.     Ameranth's claims are barred by the doctrine of prosecution estoppel based on statements, representations, and admissions made during the prosecution of the patent applications resulting in the issuance of the Patents-In-Suit and/or related patents and patent application before the USPTO.

DEFENDANT'S ANSWER TO PLAINTIFF'S COMPLAINT FOR PATENT INFRINGEMENT AND COUNTERCLAIM

AUS 536216323v6

**EIGHTH ADDITIONAL/AFFIRMATIVE DEFENSE**

58.     Ameranth's claims for injunctive relief are barred, in whole or in part, because (a) there exists adequate remedies at law, (b) Ameranth has unclean hands, and (c) Ameranth's claims otherwise fail to meet the requirements for injunctive relief.

**NINTH ADDITIONAL/AFFIRMATIVE DEFENSE**

1.     The '077 Patent, and each claim thereof, is unenforceable as a result of inequitable conduct by the named inventors, applicant, their attorney(s), their agent(s), representative(s), predecessors-in-interest to the '077 Patent, and/or the person(s) involved in the preparation and/or prosecution of the '077 Patent. The inequitable conduct comprises intentional misrepresentations and/or material omissions, including without limitation:

59.     The '077 Patent, and each claim thereof, is unenforceable due to inequitable conduct during the prosecution of the '077 Patent by Michael D. Fabiano ("Fabiano"), who acted as prosecution counsel for Plaintiff before the USPTO, and Keith McNally ("McNally"), a named inventor.

60.     On April 22, 2005, the application for the '077 Patent ("the '077 Application") was filed. McNally is identified on the '077 Patent as one of the inventors. Examiner Matthew Brophy ("Examiner Brophy") primarily handled the examination of the '077 Application.

61.     On July 26, 2005, U.S. Pat. Appl. 11/190,633 ("the '633 Application") was filed. The '633 Application is a continuation-in-part application from the '077 Application and names McNally as an inventor. Examiner Rutao Wu ("Examiner Wu") primarily handled the examination of the '633 Application.

62.     The examinations of the '077 Application and the '633 Application were occurring simultaneously, but by different patent examiners of the USPTO.

63.     On January 7, 2010, Examiner Wu finally rejected all claims then pending in the '633 Application (the "January 7, 2010 Office Action/'633 Application"). The primary reference relied upon by Examiner Wu in the January 7, 2010 Office Action/'633 Application was U.S. Patent No. 7,069,228, issued to Rose et al. ("the Rose Patent"). Secondary references used in combination with the Rose Patent to reject the claims include one or more of U.S. Patent No. 6,415,138, issued to Sirola et al. ("the

DEFENDANT'S ANSWER TO PLAINTIFF'S COMPLAINT FOR PATENT INFRINGEMENT AND COUNTERCLAIM

AUS 536216323v6

Sirola Patent"), U.S. Patent No. 6,594,347, issued to Calder et al. ("the Calder Patent") and U.S. Patent No. 6,366,650, issued to Rhie et al. ("the Rhie Patent").

64.     On information and belief, on February 2, 2010, McNally (as CEO of Plaintiff) executed a power of attorney allowing Fabiano and Fabiano's lawfirm (Mazzarella Caldarelli LLP) to represent Plaintiff before the USPTO for the prosecution of the '077 Application.

65.     On information and belief, on July 2, 2010, McNally (as President of Plaintiff) executed a power of attorney allowing Fabiano and Fabiano's lawfirm (Mazzarella Caldarelli LLP) to represent Plaintiff before the USPTO for the prosecution of the '633 Application.

66.     On the same day, Fabiano signed and filed a response to the rejection of all claims then pending in the '633 Application ("the July 2, 2010 Response/'633 Application").  The July 2, 2010 Response/'633 Application presented detailed arguments attempting to distinguish Plaintiff's alleged invention then being claimed in the '633 Application from one or more of the Rose Patent, the Sirola Patent, the Calder Patent and the Rhie Patent.

67.     On information and belief, McNally was significantly involved in the prosecution of both the '633 Application and the '077 Application.  For example, during the prosecution of the '077 Application, McNally executed multiple declarations and participated in multiple interviews with the USPTO.

68.     On information and belief, both McNally and Fabiano were aware of the Rose Patent, the Sirola Patent, the Calder Patent, and the Rhie Patent and their materiality to the '077 Application at least as early as July 2, 2010.

69.     On October 5, 2010, Examiner Wu issued an office action (the "October 5, 2010 Office Action/'633 Application") indicating that all of Plaintiff's arguments in the July 2, 2010 Response/'633 Application (that the '633 Application claims were not rendered unpatentable primarily in light of the Rose Patent) were considered but were found to be unpersuasive.  In the October 5, 2010, Office Action/'633 Application, the Examiner maintained the rejections based primarily on the Rose Patent with one or more of the secondary references including the Sirola Patent, the Calder Patent, and the Rhie Patent.

DEFENDANT'S ANSWER TO PLAINTIFF'S COMPLAINT FOR PATENT INFRINGEMENT AND COUNTERCLAIM
*12cv01656 JLS (NLS)*
AUS 536216323v6

70.     On October 26, 2010, Fabiano signed and filed a response to the October 5, 2010 Office Action/'633 Application (the "October 26, 2010 Response/'633 Application").  The October 26, 2010 Response/'633 Application presented detailed arguments attempting to distinguish Plaintiff's alleged invention then being claimed in the '633 Application from one or more of the Rose Patent, the Sirola Patent, the Calder Patent, and the Rhie Patent.

71.     On information and belief, on November 16, 2010, Fabiano held a telephonic interview with Examiner Wu during which the patentability of claims in the '633 Application (in light of at least the Rose Patent and the Sirola Patent) was discussed.  McNally was a participant in this telephone interview.

72.     The same day (November 16, 2010), Fabiano held a telephonic interview with Examiner Brophy during which the patentability of claims in the '077 Application was discussed.  The prior art discussed with Examiner Brophy was Micros Systems Inc. "8700 HMS 2.10 User's Manual" (1997) ("Micros"), United States Patent No. 6,300,947 ("Kanevsky Patent"), and United States Patent No. 5,974,238 ("Chase Patent"). McNally was a participant in this telephone interview.

73.     On December 8, 2010, Fabiano signed and filed a supplemental response (the "December 8, 2010 Supplemental Response/'633 Application") presenting detailed arguments attempting to distinguish Plaintiff's alleged invention then being claims in the '633 Application from one or more of the Rose Patent, the Sirola Patent, the Calder Patent, and the Rhie Patent.

74.     About a week later (on December 16, 2010), Fabiano signed and filed a supplemental response (the "December 16, 2010 Supplemental Response/'077 Application") to Examiner Brophy's rejections of the pending claims in the '077 Application. Nowhere in the December 16, 2010 Supplemental Response/'077 Application did Fabiano mention or disclose the Rose Patent, the Sirola Patent, the Calder Patent, and the Rhie Patent or the discussions Fabiano had been having with the USPTO in the '633 Application regarding this prior art.

75.     On February 15, 2011, Examiner Wu issued a final office action (the "February 15, 2011 Final Office Action/'633 Application") indicating that the October 26, 2010 Response/'633 Application and the December 8, 2010 Supplemental Response/'633 Application were considered but were found unpersuasive with respect to the prior art rejections of the pending claims of the '633 Application.  In

the February 15, 2011 Final Office Action/'633 Application, Examiner Wu maintained the prior art rejections (with the Rose Patent being the primary reference for these rejections).   An additional secondary reference, U.S. Patent No. 6,356,543, issued to Hall et al. ("the Hall Patent") was used in combination with the Rose Patent (and other cited patents) to reject certain of the pending claims.

76.     On March 30, 2011, Fabiano filed an appeal brief in the '633 Application indicating that Fabiano had actual knowledge of the Hall Patent (cited by Examiner Wu in the February 15, 2011 Final Office Action/'633 Application).

77.     To date, the '633 Application has not yet issued as a patent.

78.     One or more rejected claims of the '633 Application are substantively similar to one or more issued claims of the '077 Patent.

79.     The preamble of Claim 13 of the '077 Patent reads:

An information management and real time synchronous communications system for use

with wireless handheld computing devices and the internet comprising:

The preamble of each of Claims 77 and 97 of the '633 Application is identical to the preamble of Claim 13 of the '077 Patent.

80.     Element (a) of Claim 13 of the '077 Patent reads:

a master database connected in said system and configured to store hospitality application

information pursuant to a master database file structure.

Element (a) of Claim 77 of the '633 Application reads:

a master database containing at least one hospitality application(s) and associated data.

Element (a) of Claim 97 of the '633 Application reads:

a master database containing hospitality applications and associated data.

81.     Element (b) of Claim 13 of the '077 Patent reads:

at least one wireless handheld computing device connected in said system and configured

to display said hospitality application information.

Element (b) of Claim 77 of the '633 Application reads:

13

DEFENDANT'S ANSWER TO PLAINTIFF'S COMPLAINT FOR PATENT INFRINGEMENT AND COUNTERCLAIM

12cv01656 JLS (NLS)

AUS 536216323v6

application software enabled to configure hospitality data for display on the "non pc standard" display sized screen of at least one wireless handheld computing device in which the at least one hospitality application is stored.

Element (b) of Claim 97 of the '633 Application reads:

data application software enabled to configure hospitality data for display on the "non pc standard" display sized screen of at least one wireless handheld computing device in which the at least one hospitality application is stored.

82.     Element (c) of Claim 13 of the '077 Patent reads:

at least one web server connected in said system.

Element (c) of Claim 77 of the '633 Application reads:

at least one Web server enabled by application software to interface with at least one hospitality application and its associated data.

Element (c) of Claim 97 of the '633 Application reads:

at least one Web server enabled by application software to interface with at least one hospitality applications and associated data.

83.     Element (d) of Claim 13 of the '077 Patent reads:

at least one web page connected in said system and configured to display said hospitality application information.

Element (d) of Claim 77 of the '633 Application reads:

application software enabled to configure hospitality data for display on at least one web page.

84.     Element (e) of Claim 13 of the '077 Patent reads:

---

14

real time communications control software enabled to link and synchronize hospitality application information simultaneously between the master database, wireless handheld computing device, web server and web page.

The second wherein clause of Claim 77 of the '633 Application reads:

wherein the system is enabled via application software to synchronize the at least one hospitality application(s) and its associated data with the data in a second and different hospitality application in real time between the master database, the at least one Web server, the at least one wireless computing device and the at least one web page.

The first wherein clause of Claim 97 of the '633 Application reads:

wherein the system is enabled by application software to synchronize the at least one hospitality application and data in real time between the master database, the at least one wireless handheld computing device, the at least one Web server and the at least one Web page.

85.    The second wherein clause of Claim 13 of the '077 Patent reads:

wherein the communications control software is enabled to act as a real time interface between the elements of the system and any applicable communications protocol.

The third wherein clause of Claim 77 of the '633 Application reads:

wherein the communications control module is enabled via application software to act as an interface between the at least one hospitality application(s) and any applicable communications protocol.

The second wherein clause of Claim 97 of the '633 Application reads:

wherein the communications control module is also enabled via application software to act as an interface between the at least one hospitality applications and any applicable communications protocol.

86.     Given the substantive similarity between the claims of the '633 Application rejected in light of each of the Rose Patent, the Sirola Patent, the Calder Patent, the Rhie Patent, and the Hall Patent, each of the Rose Patent, the Sirola Patent, the Calder Patent, the Rhie Patent, and the Hall Patent were (and are) material to the patentability of the '077 Patent.  The Rose Patent, the Sirola Patent, the Calder Patent, the Rhie Patent, and the Hall Patent are not cumulative to any other prior art that was before the USPTO during prosecution of the '077 Application.

87.     On February 2, 2012, Examiner Brophy issued a notice of allowance for the '077 Application.  The '077 Patent then issued on March 27, 2012.

88.     One or more claims of the '077 Patent would not have issued had Fabiano or McNally disclosed one or more of the Rose Patent, the Sirola Patent, the Calder Patent, the Rhie Patent, and the Hall Patent during prosecution of the '077 Application.

89.     On information and belief, prior to March 27, 2012, Fabiano became aware that each of the Rose Patent, the Sirola Patent, the Calder Patent, the Rhie Patent and the Hall Patent was a non-cumulative, material reference to examination of the '077 Application and this knowledge triggered Fabiano's duty to disclose each of the Rose Patent, the Sirola Patent, the Calder Patent, the Rhie Patent and the Hall Patent to the USPTO in accordance with 37 C.F.R. § 1.56.

90.     On information and belief, prior to March 27, 2012, McNally became aware that each of the Rose Patent, the Sirola Patent, the Calder Patent, the Rhie Patent, and the Hall Patent was a non-cumulative, material reference to examination of the '077 Application and this knowledge triggered McNally's duty to disclose each of the Rose Patent, the Sirola Patent, the Calder Patent, the Rhie Patent, and the Hall Patent to the USPTO in accordance with 37 C.F.R. § 1.56.

91.     During prosecution of the '077 Patent, Fabiano did not submit the Rose Patent, the Sirola Patent, the Calder Patent, the Rhie Patent, and the Hall Patent to Examiner Brophy.  During prosecution of the '077 Patent, McNally did not submit the Rose Patent, the Sirola Patent, the Calder Patent, the Rhie Patent, and the Hall Patent to Examiner Brophy.  During prosecution of the '077 Patent, none of the inventors, applicant, their attorney(s), their agent(s), representative(s), predecessors-in-interest to the '077 Patent, and the person(s) involved in the preparation and/or prosecution of the '077 Patent

submitted the Rose Patent, the Sirola Patent, the Calder Patent, the Rhie Patent, and the Hall Patent to Examiner Brophy.

92.     The Rose Patent, the Sirola Patent, the Calder Patent, the Rhie Patent, and the Hall Patent are not listed on any information disclosure statement submitted by Plaintiff during prosecution of the '077 Application.

93.     The Rose Patent, the Sirola Patent, the Calder Patent, the Rhie Patent, and the Hall Patent were not cited by Examiner Brophy during prosecution of the '077 Application.

94.     On information and belief, despite their knowledge of the materiality of each of the Rose Patent, the Sirola Patent, the Calder Patent, the Rhie Patent and the Hall Patent to patentability of claims substantively similar to those pending in the '077 Application, neither Fabiano, McNally, nor any other agent of Plaintiff informed Examiner Brophy of the Rose Patent, the Sirola Patent, the Calder Patent, the Rhie Patent, or the Hall Patent during the prosecution of the '077 Application.  A period of 635 days passed between July 2, 2010, the latest possible date of which Fabiano and McNally became aware of the Rose Patent, the Sirola Patent, the Calder Patent, and the Rhie Patent, and March 27, 2012, the date of issuance of the '077 Patent.  A period of 364 days passed between March 30, 2011, the latest possible date of which Fabiano and McNally became aware of the Hall Patent, and March 27, 2012, the date of issuance of the '077 Patent.

95.     On information and belief, both Fabiano and McNally stand to benefit financially from any licensing fees or other revenue generated by the '077 Patent.

96.     On information and belief, Fabiano intentionally withheld the existence of each of the Rose Patent, the Sirola Patent, the Calder Patent, the Rhie Patent, and the Hall Patent from the USPTO during prosecution of the '077 Patent and thereby breached his duty of good faith and candor in dealing with the USPTO in accordance with 37 C.F.R. § 1.56.

97.     On information and belief, McNally intentionally withheld the existence of each of the Rose Patent, the Sirola Patent, the Calder Patent, the Rhie Patent, and the Hall Patent from the USPTO during prosecution of the '077 Patent and thereby breached his duty of good faith and candor in dealing with the USPTO in accordance with 37 C.F.R. § 1.56.

DEFENDANT'S ANSWER TO PLAINTIFF'S COMPLAINT FOR PATENT INFRINGEMENT AND COUNTERCLAIM

AUS 536216323v6

98.     The '077 Patent would not have issued with its current claims if one or more of the Rose Patent, the Sirola Patent, the Calder Patent, the Rhie Patent, and the Hall Patent had been disclosed to Examiner Brophy.  Accordingly, all claims of the '077 Patent are unenforceable due to the inequitable conduct of Fabiano and McNally during the prosecution of the '077 Application.

## FURTHER ADDITIONAL/AFFIRMATIVE DEFENSES

99.     Tabbedout reserves the right to add additional defenses as discovery develops.

## JURY DEMAND

100.    Tabbedout admits that Ameranth has requested a trial by jury.

101.    Under FED. R. CIV. P. 38, Tabbedout hereby demands a trial by jury of all issues so triable by right.

## PRAYER FOR RELIEF

Tabbedout denies that Ameranth is entitled to any of the relief prayed for in its Prayer for Relief and denies that Ameranth is entitled to any relief whatsoever from Tabbedout or this Court either as requested in Plaintiff's Complaint or otherwise.

## COUNTERCLAIM

Under FED. R. CIV. P. 13, Counter-Plaintiff ATX Innovation, Inc., d/b/a/ Tabbedout ("Tabbedout") hereby asserts the following counterclaims against Counter-Defendant Ameranth, Inc. ("Ameranth"), and alleges the following:

## PARTIES

2.      Tabbedout is a Delaware corporation having a principal place of business and headquarters in Austin, Texas.  Tabbedout is incorporated in Delaware under the corporate name ATX Innovation, Inc. and does business under the name Tabbedout.

3.      On information and belief, Ameranth is a Delaware Corporation and has a principal place of business in San Diego, California.

## JURISDICTION AND VENUE

4.      This is a counterclaim under Fed. R. Civ. P. 13.

DEFENDANT'S ANSWER TO PLAINTIFF'S COMPLAINT FOR PATENT INFRINGEMENT AND COUNTERCLAIM
12cv01656 JLS (NLS)
AUS 536216323v6

5.     This is a civil action regarding allegations of patent infringement arising under the patent laws of the United States, Title 35 of the United States Code.  Tabbedout seeks declaratory relief under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 & 2202.  This Court has subject-matter jurisdiction over this matter under 28 U.S.C. §§ 1331, 1338, 2201, and 2202, and the Patent Laws of the United States, 35 U.S.C. § 1, *et seq*.

6.     An actual controversy exists between Tabbedout and Ameranth as a result of Ameranth's assertions of rights under U.S. Patent Nos. 6,384,850 ("the '850 Patent"), 6,871,325 ("the '325 Patent"), and 8,146,077 ("the '077 Patent"), (collectively, the "Patents-In-Suit").

7.     In a Complaint For Patent Infringement ("Plaintiff's Complaint") filed before this Court on June 29, 2012, Ameranth alleged that Tabbedout was infringing each of the Patents-In-Suit. Tabbedout does not infringe any of the Patents-In-Suit and has denied Ameranth's allegations of infringement of the Patents-In-Suit.

8.     This Court has personal jurisdiction over Ameranth, including because Ameranth has availed itself to the Courts of this District by commencing numerous actions in the Courts of this District (including by filing Plaintiff's Complaint in this District to which the present claim is being brought as a counterclaim, and, further including filing other complaints in this District against other parties alleging patent infringement of the Patents-In-Suit), and because, on information and belief, Ameranth's principal place of business is within this District.

9.     Venue is proper in this District because this claim is brought as a counterclaim under Fed. R. Civ. P. 13.  Venue is also proper in this District under 28 U.S.C. §§ 1391(b) and 1400(b).

## FACTUAL BACKGROUND

10.     Tabbedout provides a system that allows patrons of participating restaurants/bars (merchants) to open, view, and pay their tab with their mobile device ("Tabbedout's System"). Tabbedout's System does not allow the patron's mobile device to interface with the merchant's point-of-sale system.  Instead, Tabbedout's System interfaces Tabbedout's central server with the patron's mobile device and also interfaces Tabbedout's central server with the point-of-sale system of a participating merchant. Tabbedout's System has three fundamental components: (i) a client component (the patron's mobile device having Tabbedout's mobile device application (the "Tabbedout app")), (ii) a

19

merchant point-of-sale component (the merchant's point-of-sale equipment that has incorporated Tabbedout's merchant software); and (iii) Tabbedout's component (Tabbedout's central server).

11.    Ameranth asserts it is the owner of the Patents-In-Suit.

12.    On June 29, 2012, Ameranth filed Plaintiff's Complaint in this District.

13.    On or about July 21, 2012, Plaintiff's Complaint was served upon Tabbedout.

14.    Prior to the service of Plaintiff's Complaint upon Tabbedout, Tabbedout had no knowledge or notice of the Patents-In-Suit or of any claim that Tabbedout was allegedly infringing one or more of the Patents-In-Suit.

15.    Before service of Plaintiff's Complaint upon Tabbedout, Ameranth did not provide notice to Tabbedout of Ameranth's belief that Tabbedout was allegedly infringing one or more of the Patents-In-Suit.

16.    Tabbedout's System is not a system or product for "[g]enerating and transmitting menus in a system including a central processing unit, a data storage device, a computer operating system containing a graphical user interface, one or more displayable main menus, modifier menus, and sub-modifier menus, and application software for generating a second menu and transmitting it to a wireless handheld computing device or a Web page."

17.    There is no factual basis for alleging that Tabbedout's System is a system or product for "[g]enerating and transmitting menus in a system including a central processing unit, a data storage device, a computer operating system containing a graphical user interface, one or more displayable main menus, modifier menus, and sub-modifier menus, and application software for generating a second menu and transmitting it to a wireless handheld computing device or a Web page."

18.    At the time Ameranth brought suit, Ameranth had no factual basis for alleging that Tabbedout's System is a system or product for "[g]enerating and transmitting menus in a system including a central processing unit, a data storage device, a computer operating system containing a graphical user interface, one or more displayable main menus, modifier menus, and sub-modifier menus, and application software for generating a second menu and transmitting it to a wireless handheld computing device or a Web page."

DEFENDANT'S ANSWER TO PLAINTIFF'S COMPLAINT FOR PATENT INFRINGEMENT AND COUNTERCLAIM

*12cv01656 JLS (NLS)*

AUS 536216323v6

19.     Despite this lack of factual basis, Ameranth alleged in Plaintiff's Complaint that Tabbedout had a system/product for "[g]enerating and transmitting menus in a system including a central processing unit, a data storage device, a computer operating system containing a graphical user interface, one or more displayable main menus, modifier menus, and sub-modifier menus, and application software for generating a second menu and transmitting it to a wireless handheld computing device or a Web page."

20.     Tabbedout's System is not a system or product for "[g]enerating and transmitting menus." Tabbedout's System is not a system or product for "generating a second menu and transmitting [the second menu] to a wireless handheld computing device or a Web page."

21.     There is no factual basis for alleging that Tabbedout's System is a system or product for "[g]enerating and transmitting menus." There is no factual basis for alleging that Tabbedout's System is a system or product for "generating a second menu and transmitting [the second menu] to a wireless handheld computing device or a Web page."

22.     At the time Ameranth brought suit, Ameranth had no factual basis for alleging that Tabbedout's System is a system or product for "[g]enerating and transmitting menus." At the time Ameranth brought suit, Ameranth had no factual basis for alleging that Tabbedout's System is a system or product for "generating a second menu and transmitting [the second menu] to a wireless handheld computing device or a Web page."

23.     Despite this lack of factual basis, Ameranth alleged in Plaintiff's Complaint that (a) Tabbedout had a system/product for "[g]enerating and transmitting menus" and (b) Tabbedout had a system/product for "generating a second menu and transmitting [the second menu] to a wireless handheld  computing device or a Web page."

24.     Tabbedout's System is not a system or product for "enabling ordering, reservations, and other hospitality functions via iPhone, Android, or other internet-enabled wireless handheld computing devices as well as via Web pages, storing hospitality information and data on a least one central database, on at last one wireless handheld computing device, and on at least one Web server and Web page, and synchronizing applications and data."

DEFENDANT'S ANSWER TO PLAINTIFF'S COMPLAINT FOR PATENT INFRINGEMENT AND COUNTERCLAIM
*12cv01656 JLS (NLS)*

*AUS 536216323v6*

25.     There is no factual basis for alleging that Tabbedout's System is a system or product for "enabling ordering, reservations, and other hospitality functions via iPhone, Android, or other internet-enabled wireless handheld computing devices as well as via Web pages, storing hospitality information and data on a least one central database, on at last one wireless handheld computing device, and on at least one Web server and Web page, and synchronizing applications and data."

26.     At the time Ameranth brought suit, Ameranth had no factual basis for alleging that Tabbedout's System is a system or product capable of "enabling ordering, reservations, and other hospitality functions via iPhone, Android, or other internet-enabled wireless handheld computing devices as well as via Web pages, storing hospitality information and data on a least one central database, on at last one wireless handheld computing device, and on at least one Web server and Web page, and synchronizing applications and data."

27.     Despite this lack of factual basis, Ameranth alleged in Plaintiff's Complaint that Tabbedout had a system/product for "enabling ordering, reservations, and other hospitality functions via iPhone, Android, or other internet-enabled wireless handheld computing devices as well as via Web pages, storing hospitality information and data on a least one central database, on at last one wireless handheld computing device, and on at least one Web server and Web page, and synchronizing applications and data."

28.     Tabbedout's System is not a system or product for "enabling ordering, reservations, and other hospitality functions via iPhone, Android, or other internet-enabled wireless handheld computing devices as well as via Web pages."  Tabbedout's System is not a system or product for "synchronizing applications and data."

29.     There is no factual basis for alleging Tabbedout's System is a system or product for "enabling ordering, reservations, and other hospitality functions via iPhone, Android, or other internet-enabled wireless handheld computing devices as well as via Web pages."  There is no factual basis for alleging Tabbedout's System is a system or product for "synchronizing applications and data."

30.     At the time Ameranth brought suit, Ameranth had no factual basis for alleging Tabbedout's System is a system or product for "enabling ordering, reservations, and other hospitality functions via iPhone, Android, or other internet-enabled wireless handheld computing devices as well as

22

DEFENDANT'S ANSWER TO PLAINTIFF'S COMPLAINT FOR PATENT INFRINGEMENT AND COUNTERCLAIM

via Web pages."   At the time Ameranth brought suit, Ameranth had no factual basis for alleging Tabbedout's System is a system or product for "synchronizing applications and data."

31.     Despite this lack of factual basis, Ameranth alleged in Plaintiff's Complaint that (a) Tabbedout had a system/product for "enabling ordering, reservations, and other hospitality functions via iPhone, Android, or other internet-enabled wireless handheld computing devices as well as via Web pages" and (b) Tabbedout had a system/product for "synchronizing applications and data."

**<u>COUNT I</u>**

**(Non-Infringement)**

32.     Paragraphs 1 through 30 of this Counterclaim are incorporated by reference as if stated fully herein.

33.     Tabbedout has not infringed and does not infringe any valid, enforceable claim of the Patents-In-Suit, either literally or under the doctrine of equivalents.

34.     An actually controversy exists between Tabbedout and Ameranth as whether Tabbedout is infringing one or more claims of the Patents-In-Suit.

35.     While Ameranth alleges otherwise in Plaintiff's Complaint, Tabbedout is not directly infringing, and has not directly infringed, any of the claims of the Patents-In-Suit, including literally or under the doctrine of equivalent.

36.     While Ameranth alleges otherwise in Plaintiff's Complaint, Tabbedout is not indirectly infringing, and has not indirectly infringed, any of the claims of the Patents-In-Suit, including contributorily and/or by active inducement.

37.     Tabbedout seeks declaratory judgment that it has not infringed and does not infringe any valid, enforceable claim of the Patents-In-Suit, either literally or under the doctrine of equivalents.

38.     Under the Federal Judgment Act, 28 U.S.C. § 2201 *et seq*., Tabbedout requests a declaration that Tabbedout is not infringing and has not infringed, directly or indirectly, any of the Patents-In-Suit (literally and under the doctrine of equivalents).

DEFENDANT'S ANSWER TO PLAINTIFF'S COMPLAINT FOR PATENT INFRINGEMENT AND COUNTERCLAIM

*12cv01656 JLS (NLS)*

AUS 536216323v6

## COUNT II

### (Invalidity)

39.     Paragraphs 1 through 38 of this Counterclaim are incorporated by reference as if stated fully herein.

40.     An actually controversy exists between Tabbedout and Ameranth as to whether the claims of the Patents-In-Suit are invalid.

41.     Each of the claims of the Patents-In-Suit is invalid because it fails to satisfy one or more conditions for patentability specified in Title 35 of the United States Code, including, but not limited to, 35 U.S.C. §§ 101, 102, 103, and 112.

42.     Tabbedout seeks a declaratory judgment that each claim of the Patents-In-Suit is invalid for failure to satisfy one or more requirements of the Title 35 of the United States Code.

43.     Under the Federal Judgment Act, 28 U.S.C. § 2201 et seq., Tabbedout requests a declaration that the claims of the Patents-In-Suit are invalid.

## COUNT III

### (Unenforceability)

44.     Paragraphs 1 through 43 of this Counterclaim are incorporated by reference as if stated fully herein.

45.     The '077 Patent, and each claim thereof, is unenforceable as a result of inequitable conduct by the named inventors, applicant, their attorney(s), their agent(s), representative(s), predecessors-in-interest to the '077 Patent, and/or the person(s) involved in the preparation and/or prosecution of the '077 Patent. The inequitable conduct comprises intentional misrepresentations and/or material omissions, including without limitation:

46.     The '077 Patent, and each claim thereof, is unenforceable due to inequitable conduct during the prosecution of the '077 Patent by Michael D. Fabiano ("Fabiano"), who acted as prosecution counsel for Plaintiff before the USPTO, and Keith McNally ("McNally"), a named inventor

47.     An actual controversy therefore exists between Plaintiff and Tabbedout over the alleged enforceability of the '077 Patent.

48.     On April 22, 2005, the application for the '077 Patent ("the '077 Application") was filed. McNally is identified on the '077 Patent as one of the inventors.   Examiner Matthew Brophy ("Examiner Brophy") primarily handled the examination of the '077 Application.

49.     On July 26, 2005, U.S. Pat. Appl. 11/190,633 ("the '633 Application") was filed.   The '633 Application is a continuation-in-part application from the '077 Application and names McNally as an inventor.   Examiner Rutao Wu ("Examiner Wu") primarily handled the examination of the '633 Application.

50.     The examinations of the '077 Application and the '633 Application were occurring simultaneously, but by different patent examiners of the USPTO.

51.     On January 7, 2010, Examiner Wu finally rejected all claims then pending in the '633 Application ("January 7, 2010 Office Action/'633 Application").   The primary reference relied upon by Examiner Wu in the January 7, 2010 Office Action/'633 Application was U.S. Patent No. 7,069,228, issued to Rose et al. ("the Rose Patent").   Secondary references used in combination with the Rose Patent to reject the claims include one or more of U.S. Patent No. 6,415,138, issued to Sirola et al. ("the Sirola Patent"), U.S. Patent No. 6,594,347, issued to Calder et al. ("the Calder Patent") and U.S. Patent No. 6,366,650, issued to Rhie et al. ("the Rhie Patent").

52.     On information and belief, on February 2, 2010, McNally (as CEO of Plaintiff) executed a power of attorney allowing Fabiano and Fabiano's lawfirm (Mazzarella Caldarelli LLP) to represent Plaintiff before the USPTO for the prosecution of the '077 Application.

53.     On information and belief, on July 2, 2010, McNally (as President of Plaintiff) executed a power of attorney allowing Fabiano and Fabiano's lawfirm (Mazzarella Caldarelli LLP) to represent Plaintiff before the USPTO for the prosecution of the '633 Application.

54.     On the same day, Fabiano signed and filed a response to the rejection of all claims then pending in the '633 Application ("the July 2, 2010 Response/'633 Application").   The July 2, 2010 Response/'633 Application presented detailed arguments attempting to distinguish Plaintiff's alleged invention then being claimed in the '633 Application from one or more of the Rose Patent, the Sirola Patent, the Calder Patent and the Rhie Patent.

55.     On information and belief, McNally was significantly involved in the prosecution of both the '633 Application and the '077 Application.  For example, during the prosecution of the '077 Application, McNally executed multiple declarations and participated in multiple interviews with the USPTO.

56.     On information and belief, both McNally and Fabiano were aware of the Rose Patent, the Sirola Patent, the Calder Patent, and the Rhie Patent and their materiality to the '077 Application at least as early as July 2, 2010.

57.     On October 5, 2010, Examiner Wu issued an office action (the "October 5, 2010 Office Action/'633 Application") indicating that all of Plaintiff's arguments in the July 2, 2010 Response/'633 Application (that the '633 Application claims were not rendered unpatentable primarily in light of the Rose Patent) were considered but were found to be unpersuasive.  In the October 5, 2010, Office Action/'633 Application, the Examiner maintained the rejections based primarily on the Rose Patent with one or more of the secondary references including the Sirola Patent, the Calder Patent, and the Rhie Patent.

58.     On October 26, 2010, Fabiano signed and filed a response to the October 5, 2010 Office Action/'633 Application (the "October 26, 2010 Response/'633 Application").  The October 26, 2010 Response/'633 Application presented detailed arguments attempting to distinguish Plaintiff's alleged invention then being claimed in the '633 Application from one or more of the Rose Patent, the Sirola Patent, the Calder Patent, and the Rhie Patent.

102.     On information and belief, on November 16, 2010, Fabiano held a telephonic interview with Examiner Wu during which the patentability of claims in the '633 Application (in light of at least the Rose Patent, and the Sirola Patent) was discussed.  McNally was a participant in this telephone interview.

59.     The same day (November 16, 2010), Fabiano held a telephonic interview with Examiner Brophy during which the patentability of claims in the '077 Application was discussed.  The prior art discussed with Examiner Brophy was Micros Systems Inc. "8700 HMS 2.10 User's Manual" (1997) ("Micros"), United States Patent No. 6,300,947 ("Kanevsky Patent"), and United States Patent No. 5,974,238 ("Chase Patent").   McNally was a participant in this telephone interview.

DEFENDANT'S ANSWER TO PLAINTIFF'S COMPLAINT FOR PATENT INFRINGEMENT AND COUNTERCLAIM

*12cv01656 JLS (NLS)*

AUS 536216323v6

60.     On December 8, 2010, Fabiano signed and filed a supplemental response (the "December 8, 2010 Supplemental Response/'633 Application") presenting detailed arguments attempting to distinguish Plaintiff's alleged invention then being claims in the '633 Application from one or more of the Rose Patent, the Sirola Patent, the Calder Patent, and the Rhie Patent.

61.     About a week later (on December 16, 2010), Fabiano signed and filed a supplemental response (the "December 16, 2010 Supplemental Response/'077 Application") to Examiner Brophy's rejections of the pending claims in the '077 Application. Nowhere in the December 16, 2010 Supplemental Response/'077 Application did Fabiano mention or disclose the Rose Patent, the Sirola Patent, the Calder Patent, and the Rhie Patent or the discussions Fabiano had been having with the USPTO in the '633 Application regarding this prior art.

62.     On February 15, 2011, Examiner Wu issued a final office action (the "February 15, 2011 Final Office Action/'633 Application") indicating that the October 26, 2010 Response/'633 Application and the December 8, 2010 Supplemental Response/'633 Application were considered but were found unpersuasive with respect to the prior art rejections of the pending claims of the '633 Application.  In the February 15, 2011 Final Office Action/'633 Application, Examiner Wu maintained the prior art rejections (with the Rose Patent being the primary reference for these rejections).  An additional secondary reference, U.S. Patent No. 6,356,543, issued to Hall et al. ("the Hall Patent") was used in combination with the Rose Patent (and other cited patents) to reject certain of the pending claims.

63.     On March 30, 2011, Fabiano filed an appeal brief in the '633 Application indicating that Fabiano had actual knowledge of the Hall Patent (cited by Examiner Wu in the February 15, 2011 Final Office Action/'633 Application).

64.     To date, the '633 Application has not yet issued as a patent.

65.     One or more rejected claims of the '633 Application are substantively similar to one or more issued claims of the '077 Patent.

66.     The preamble of Claim 13 of the '077 Patent reads:

An information management and real time synchronous communications system for use with wireless handheld computing devices and the internet comprising:

---

27

The preamble of each of Claims 77 and 97 of the '633 Application is identical to the preamble of Claim 13 of the '077 Patent.

67.     Element (a) of Claim 13 of the '077 Patent reads:

a master database connected in said system and configured to store hospitality application information pursuant to a master database file structure.

Element (a) of Claim 77 of the '633 Application reads:

a master database containing at least one hospitality application(s) and associated data.

Element (a) of Claim 97 of the '633 Application reads:

a master database containing hospitality applications and associated data.

68.     Element (b) of Claim 13 of the '077 Patent reads:

at least one wireless handheld computing device connected in said system and configured to display said hospitality application information.

Element (b) of Claim 77 of the '633 Application reads:

application software enabled to configure hospitality data for display on the "non pc standard" display sized screen of at least one wireless handheld computing device in which the at least one hospitality application is stored.

Element (b) of Claim 97 of the '633 Application reads:

data application software enabled to configure hospitality data for display on the "non pc standard" display sized screen of at least one wireless handheld computing device in which the at least one hospitality application is stored.

69.     Element (c) of Claim 13 of the '077 Patent reads:

at least one web server connected in said system.

Element (c) of Claim 77 of the '633 Application reads:

at least one Web server enabled by application software to interface with at least one hospitality application and its associated data.

Element (c) of Claim 97 of the '633 Application reads:

at least one Web server enabled by application software to interface with at least one hospitality applications and associated data.

70.    Element (d) of Claim 13 of the '077 Patent reads:

at least one web page connected in said system and configured to display said hospitality application information.

Element (d) of Claim 77 of the '633 Application reads:

application software enabled to configure hospitality data for display on at least one web page.

71.    Element (e) of Claim 13 of the '077 Patent reads:

real time communications control software enabled to link and synchronize hospitality application information simultaneously between the master database, wireless handheld computing device, web server and web page.

The second wherein clause of Claim 77 of the '633 Application reads:

wherein the system is enabled via application software to synchronize the at least one hospitality application(s) and its associated data with the data in a second and different hospitality application in real time between the master database, the at least one Web server, the at least one wireless computing device and the at least one web page.

The first wherein clause of Claim 97 of the '633 Application reads:

wherein the system is enabled by application software to synchronize the at least one hospitality application and data in real time between the master database, the at least one wireless handheld computing device, the at least one Web server and the at least one Web page.

DEFENDANT'S ANSWER TO PLAINTIFF'S COMPLAINT FOR PATENT INFRINGEMENT AND COUNTERCLAIM

AUS 536216323v6

72.     The second wherein clause of Claim 13 of the '077 Patent reads:

wherein the communications control software is enabled to act as a real time interface between the elements of the system and any applicable communications protocol.

The third wherein clause of Claim 77 of the '633 Application reads:

wherein the communications control module is enabled via application software to act as an interface between the at least one hospitality application(s) and any applicable communications protocol.

The second wherein clause of Claim 97 of the '633 Application reads:

wherein the communications control module is also enabled via application software to act as an interface between the at least one hospitality applications and any applicable communications protocol.

73.     Given the substantive similarity between the claims of the '633 Application rejected in light of each of the Rose Patent, the Sirola Patent, the Calder Patent, the Rhie Patent, and the Hall Patent, each of the Rose Patent, the Sirola Patent, the Calder Patent, the Rhie Patent, and the Hall Patent were (and are) material to the patentability of the '077 Patent.  The Rose Patent, the Sirola Patent, the Calder Patent, the Rhie Patent, and the Hall Patent are not cumulative to any other prior art that was before the USPTO during prosecution of the '077 Application.

74.     On February 2, 2012, Examiner Brophy issued a notice of allowance for the '077 Application.  The '077 Patent then issued on March 27, 2012.

75.     One or more claims of the '077 Patent would not have issued had Fabiano or McNally disclosed one or more of the Rose Patent, the Sirola Patent, the Calder Patent, the Rhie Patent and the Hall Patent during prosecution of the '077 Application.

76.     On information and belief, prior to March 27, 2012, Fabiano became aware that each of the Rose Patent, the Sirola Patent, the Calder Patent, the Rhie Patent and the Hall Patent was a non-cumulative, material reference to examination of the '077 Application and this knowledge triggered

30

Fabiano's duty to disclose each of the Rose Patent, the Sirola Patent, the Calder Patent, the Rhie Patent and the Hall Patent to the USPTO in accordance with 37 C.F.R. § 1.56.

77.    On information and belief, prior to March 27, 2012, McNally became aware that each of the Rose Patent, the Sirola Patent, the Calder Patent, the Rhie Patent, and the Hall Patent was a non-cumulative, material reference to examination of the '077 Application and this knowledge triggered McNally's duty to disclose each of the Rose Patent, the Sirola Patent, the Calder Patent, the Rhie Patent, and the Hall Patent to the USPTO in accordance with 37 C.F.R. § 1.56.

78.    During prosecution of the '077 Patent, Fabiano did not submit the Rose Patent, the Sirola Patent, the Calder Patent, the Rhie Patent, and the Hall Patent to Examiner Brophy.  During prosecution of the '077 Patent, McNally did not submit the Rose Patent, the Sirola Patent, the Calder Patent, the Rhie Patent, and the Hall Patent to Examiner Brophy.  During prosecution of the '077 Patent, none of the inventors, applicant, their attorney(s), their agent(s), representative(s), predecessors-in-interest to the '077 Patent, and the person(s) involved in the preparation and/or prosecution of the '077 Patent submitted the Rose Patent, the Sirola Patent, the Calder Patent, the Rhie Patent, and the Hall Patent to Examiner Brophy.

79.    The Rose Patent, the Sirola Patent, the Calder Patent, the Rhie Patent and the Hall Patent are not listed on any information disclosure statement submitted by Plaintiff during prosecution of the '077 Application.

80.    The Rose Patent, the Sirola Patent, the Calder Patent, the Rhie Patent, and the Hall Patent were not cited by Examiner Brophy during prosecution of the '077 Application.

81.    On information and belief, despite their knowledge of the materiality of each of the Rose Patent, the Sirola Patent, the Calder Patent, the Rhie Patent and the Hall Patent to patentability of claims substantively similar to those pending in the '077 Application, neither Fabiano, McNally, nor any other agent of Plaintiff informed Examiner Brophy of the Rose Patent, the Sirola Patent, the Calder Patent, the Rhie Patent, or the Hall Patent during the prosecution of the '077 Application.  A period of 635 days passed between July 2, 2010, the latest possible date of which Fabiano and McNally became aware of the Rose Patent, the Sirola Patent, the Calder Patent, and the Rhie Patent, and March 27, 2012, the date of issuance of the '077 Patent.  A period of 364 days passed between March 30, 2011, the latest possible

date of which Fabiano and McNally became aware of the Hall Patent, and March 27, 2012, the date of issuance of the '077 Patent.

82.     On information and belief, both Fabiano and McNally stand to benefit financially from any licensing fees or other revenue generated by the '077 Patent.

83.     On information and belief, Fabiano intentionally withheld the existence of each of the Rose Patent, the Sirola Patent, the Calder Patent, the Rhie Patent, and the Hall Patent from the USPTO during prosecution of the '077 Patent and thereby breached his duty of good faith and candor in dealing with the USPTO in accordance with 37 C.F.R. § 1.56.

84.     On information and belief, McNally intentionally withheld the existence of each of the Rose Patent, the Sirola Patent, the Calder Patent, the Rhie Patent, and the Hall Patent from the USPTO during prosecution of the '077 Patent and thereby breached his duty of good faith and candor in dealing with the USPTO in accordance with 37 C.F.R. § 1.56.

85.     The '077 Patent would not have issued with its current claims if each of the Rose Patent, the Sirola Patent, the Calder Patent, the Rhie Patent, and the Hall Patent had been disclosed to Examiner Brophy.

86.     Tabbedout therefore seeks a declaratory judgment that all claims of the '077 Patent are unenforceable due to the inequitable conduct of Fabiano and McNally during the prosecution of the '077 Application.

## EXCEPTIONAL CASE

87.     Paragraphs 1 through 86 of this Counterclaim are incorporated by reference as if stated fully herein.

88.     This is an exceptional case entitling Tabbedout to an award of its attorneys' fees incurred in connection with this action pursuant to 35 U.S.C. § 285.

89.     It was necessary for Tabbedout to retain and employ legal counsel to defend this legal action.  Tabbedout requests the recovery of its reasonable attorneys' fees.  Tabbedout reserves the right to plead for compensatory and exemplary damages, if, during discovery or during the pendency of this action, Ameranth causes injury, loss or damage to Tabbedout.

## JURY DEMAND

90.   Under FED. R. CIV. P. 38, Tabbedout hereby demands a trial by jury of all issues so triable by right.

## PRAYER FOR RELIEF

WHEREFORE, Counter-Plaintiff Tabbedout respectfully requests this Court enter judgment against Ameranth and grant the following relief:

(a)   Adjudging and declaring that Tabbedout does not infringe, and has not infringed, any valid, enforceable claim of U.S. Patent Nos. 6,384,850, 6,871,325, and 8,146,077;

(b)   Adjudging and declaring that the claims of U.S. Patent Nos. 6,384,850, 6,871,325, and 8,146,077 are invalid;

(c)   Adjudging and declaring that U.S. Patent No. 8,146,077 is unenforceable;

(d)   Dismissal of Plaintiff's Complaint with prejudice;

(e)   Adjudging that this action is an exceptional case under 35 U.S.C. § 285;

(f)   Awarding Tabbedout its costs, expenses, and reasonable attorneys' fees in this action, including, without limitation pre-judgment interest and post-judgment interest; and

(g)   Awarding to Tabbedout all other relief that the Court may deem appropriate and just under the circumstances.

Dated:         September 12, 2012          Respectfully submitted

By: /s/ J. Rick Taché
    J. Rick Taché (SBN 195100)
    tacher@gtlaw.com
    GREENBERG TRAURIG, LLP
    3161 Michelson Drive
    Suite 1000
    Irvine, California 92612
    T: 949-732-6500 / F: 949-732-6501

    Ross Spencer Garsson (*Pro Hac Vice*)
    garssonr@gtlaw.com
    GREENBERG TRAURIG, LLP
    300 W. 6th Street, Suite 2050
    Austin, Texas 78701
    T: 512-320-7200 / F: 512-320-7210
    *Attorneys for Defendant, ATX Innovation, Inc., d/b/a Tabbedout*

33

# CERTIFICATE OF SERVICE

**STATE OF CALIFORNIA, COUNTY OF ORANGE:**

 I am employed in the aforesaid county, State of California; I am over the age of 18 years and not a party to the within action; my business address is **3161 Michelson Drive, Suite 1000, Irvine, CA 92612**.

 On the below date, I served **DEFENDANT ATX INNOVATION, INC.'S ANSWER TO PLAINTIFF'S COMPLAINT FOR PATENT INFRINGEMENT AND COUNTERCLAIM** with the Clerk of the United States District Court for the Southern District, using the CM/ECF System.  The Court's CM/ECF System will send an email notification of the foregoing filing to the following parties and counsel of record who are registered with the Court's CM/ECF System:

**CALDARELLI HEJMANOWSKI & PAGE LLP**
William J. Caldarelli, Esq.
12340 El Camino Real, Suite 430
San Diego, CA 92130
Tel: (858) 720-8080
Fax: (858) 720-6680
Email: wjc@chplawfirm.com

*Attorneys for Plaintiff, Ameranth, Inc.*

☒  **(BY ELECTRONIC SERVICE VIA CM/ECF SYSTEM)**
 In accordance with the electronic filing procedures of this Court, service has been effected on the aforesaid party(s) above, whose counsel of record is a registered participant of CM/ECF, via electronic service through the CM/ECF system.

**Osborne Law LLC**
John W. Osborne, Esq.
33 Habitat Lane
Cortlandt Manor, NY 10567
Tel: (914) 714-5936
Email: josborne@osborneipl.com

*Attorneys for Plaintiff, Ameranth, Inc.*

| | |
|---|---|
| **Fabiano Law Firm, P.C.** | **Watts Law Offices** |
| Michael D. Fabiano, Esq. | Ethan M. Watts, Esq. |
| 12526 High Bluff Drive, Suite 300 | 12340 El Camino Road, Suite 430 |
| San Diego, CA 92130 | San Diego, CA 92130 |
| Tel: (619) 742-9631 | Tel: (858) 509-0808 |
| Email: mdfabiano@fabianolawfirm.com | Fax: (619) 878-5784 |
| | Email: emw@ewattslaw.com |
| *Attorneys for Plaintiff, Ameranth, Inc.* | |
| | *Attorneys for Plaintiff, Ameranth, Inc.* |

☒  **(BY MAIL)**
 By placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in the United States mail at Irvine, California addressed as set forth above.  I am familiar with the firm's practice of collection and processing correspondence for mailing.  Under that practice it would be deposited with the U.S. postal service on that same day with postage thereon fully prepaid in the ordinary course of business.

1

☒   **(FEDERAL)**      I declare under penalty of perjury that the foregoing is true and correct, and that I am employed at the office of a member of the bar of this Court and at whose direction the service was made.

Executed on September 12, 2012 at Irvine, California.

/s/ *J. Rick Taché*
J. Rick Taché

*AUS 536216323v6*